**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | **09-129-3 (ESH)** |
| v. | : | |
| | : | |
| **JONATHAN WRIGHT** | : | |

<u>DEFENDANT WRIGHT'S *IN LIMINE* MOTION FOR CURATIVE INSTRUCTION</u>

Jonathan Wright, by and through undersigned counsel, hereby submits the following memorandum in support of his oral motion for an instruction to the jury to ameliorate the damage done to the jury's confidence in undersigned counsel when the Court admonished counsel in front of the jury, for making an entirely appropriate remark predicting the absence of evidence to support the charge against Mr. Wright.

<u>BACKGROUND</u>

Mr. Wright is before the Court charged with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine. The alleged conspiracy was thwarted when law enforcement officials in Miami seized the $175,000 being transported to the Bahamas allegedly for the purpose of purchasing cocaine.

Cardinal Marshal was arrested in connection with that attempted transport of the $175,000, from Miami International Airport, to the Bahamas. Mr. Marshal was arrested; interviewed by law enforcement, and prosecuted for money smuggling. He entered into a sealed plea agreement and was ultimately sentenced to a brief period of incarceration. According to the government, since serving that sentence, Mr. Marshal has been deported.

It is the government's theory that on the same day Mr. Marshal was intercepted with the funds, Mr. Wright and Lonnell Glover flew on a different plane to the Bahamas

1

where they were to have met a man by the name of Alec, nicknamed "Big Foot" or "Foot." There, Wright and Glover, presumably with the help of Foot, were to have exchanged the money for cocaine.

### APPROPRIATE COMMENT UPON THE ABSENCE OF EVIDENCE IN OPENING STATEMENT

In opening statement, undersigned counsel predicted that the government would not prove beyond a reasonable doubt that Mr. Wright intended to use Glover's money to actually purchase cocaine.

Mindful that it is "entirely reasonable for counsel to point out to the jury the kinds of evidence that they might [] expect[] to see but [will] not," (*United States v. Lawson*, 494 F.3d 1046, 1053 (D.C. 2007), counsel listed evidence that would not be presented in support of the government's theory that Mr. Wright intended to use Mr. Glover's $175,000 for the purchase of cocaine.

The jury was told that there would be no evidence that Mr. Wright had access to cocaine, much less to 5 or more Kilograms of cocaine; that there was no evidence that Foot had access to such quantities of cocaine; that there would be no audiotape evidence of Wright and Foot negotiating the purchase of any cocaine, and that the jury would not hear from either of the men arguably in the best position to testify as to what instructions were given and/or what agreements were reached with Wright as to what use the money was to be put: Foot, and Cardinal Marshal.

This prediction about the lack of evidence was a permissible, straightforward outline of the paucity of the government's evidence as to Wright's intent. *See United States v. Lawson,* 494 F.3d 1046, 1053 (D.C. 2007). These remarks did not approach a missing witness argument because counsel "did not ask the jury, either directly, or in a

meaningful indirect manner, to infer" that either witness would have been harmful to the government's case. *See id., quoting United States v. Henson,* 486 F.2d 1292, 1298 n.4 (D.C. 1973).

Nonetheless, the Court sustained a government objection to the remarks; gave a *sua sponte* instruction to the jury, and, when counsel thereafter attempted to more clearly frame the issue as one concerning the absence of evidence, the Court *sua sponte* interrupted without any government objection and admonished counsel in front of the jury, leaving the jury with the unavoidable impression that the Court believed counsel's remarks to be inappropriate and unethical, thereby undermining the jury's confidence in counsel.

After the completion of opening statements, the Court and parties further discussed the issue outside the presence of the jury. The Court suggested that the trouble with counsel's remarks stemmed from the government's inability to produce either Marshall or Foot.

A concern over fairness to the government cannot deprive Mr. Wright of the ability to "attack the reliability of the investigation" that led to Mr. Wright being placed on trial. *See Kyles v. Whitley,* 514 U.S. 419, 446 (1995)("a common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant," and a defendant suffers enormous prejudice if he is precluded from commenting on the absence of evidence to support the government's case).

Nor can a concern with fairness to the government outweigh Mr. Wright's legitimate interest in "point[ing] out to the jury the kinds of evidence that they might [] expect to see but [would] not" in a case to prove Mr. Wright's intent to use Glover's

money for the purchase of cocaine. *See Lawson v. United States,* 494 F.3d 1046, 1053 (D.C. 2007).

Because the remarks do not approach a missing witness argument, there is no need for an inquiry into the availability of the witnesses to each side. The Court need only concern itself with whether the witness is equally available to both sides, if there were some need to determine the propriety of a missing witness argument/instruction. Since there was no missing witness argument, there is no need for the Court to be concerned with the witness' availability to one side or the other.

Moreover, any concerns over unfairness to the government are entirely unfounded. There are and were many avenues the government could have, and chose not to, pursue to secure the presence of both men.

Cardinal Marshall appears to have entered into a cooperation agreement with the government. The government could have conditioned any concessions it made to Marshall in connection with that agreement, on Marshall's agreement to return to the United States and testify at trial.

Alternatively, the government could have secured Marshall's testimony by charging him with the instant conspiracy. The government concedes that Cardinal Marshall could have been arrested and prosecuted in the case before the Court. For tactical reasons, the government chose not to arrest Glover, Robbins, and Wright, until after Marshall's arrest in June 2007. The government's tactical decision cannot render Mr. Marshall "unavailable" for purposes of depriving the defense of commenting upon his absence as a witness at trial.

Had the government charged Mr. Marshal in this conspiracy, he may very well have entered into a cooperation agreement with the government – just as he appears to have done in Florida – and then been available to the government as a witness at trial.

The government claims now to have "contacted Mr. Marshall," who, the government claims, "refused to testify." The government's bald assertion given all the other avenues available to it, cannot suffice to deprive Mr. Wright of a legitimate, approved method of attacking the government's proof. Moreover, prior to trial counsel and the Court were assured by the government that it would not call Cardinal Marshall as a witness at trial. Never did the government indicate that it either had, or intended to, make any effort to secure Mr. Marshall's attendance in Court. Thus, it was entirely appropriate for counsel to make the remarks made in opening.

The government has had ample time and opportunity to identify Foot. Since Mr. Wright placed an intercepted phone call to the home of Alec, aka "Foot," on or about June 2, 2007, the government has been in possession of Foot's home phone number, apparently in the Bahamas. Moreover, the government conducted videotaped surveillance of Foot meeting with Mr. Wright, Mr. Glover, and Mr. Robbins, in Fort Lauderdale on or about April 30, 2007.

A witness outside the subpoena power of the United States is nonetheless available, unless and until the government fails after making good faith efforts to obtain the witness' presence. *United States v. Pena-Gutierrez,* 222 F.3d 1080, 1088 (9th Cir. 2000)(Mexican citizen deported by federal agents not "unavailable" under F.R.E. 804(a) where the government made no effort to obtain the witness' presence and asserted no

basis for believing that the witness would not respond to a request to return to the United States to testify).

There is a great deal at stake for Mr. Wright. It is not too much to ask that the government exert a little effort to prove its case against him. Where the government fails to undertake reasonable investigative efforts, it is perfectly appropriate for defense counsel to bring that failure to the attention of the jury.

WHEREFORE the defendant respectfully requests that the Court instruct the jury that counsel's opening remarks were not objectionable, and that counsel did not over-step, over-state, nor mislead the jury in any way by making the permissible remarks.

Respectfully submitted,

*/s/ Nikki Lotze*

_____

Nikki Lotze
LOTZE MOSLEY, LLP
503 D Street, NW
Suite 300
Washington, D.C. 20001
(202) 393-0535